HANISEE, Judge (concurring in part and dissenting in part). {28} I concur in the Majority Opinion’s application of our recent opinion in Millar to reverse the district court and hold that the appeal hearing conducted by the DWS Tribunal was timely under state and federal law and that D WS was not equitably estopped from recouping unemployment compensation benefits overpaid to Garduño.[1] I do not agree, however, that the same legally compliant hearing simultaneously offends the constitutional safeguard of procedural due process. As well, it is unlikely that New Mexico law creates a “property interest” — the threshold requirement of due process claims — in erroneously paid benefits to which a claimant was legally determined to be unentitled and no longer asserts were paid to her as a matter of substantive right. I respectfully dissent from Part C of today’s ruling holding that Garduño’s due process rights were violated and prohibiting DWS from complying with its statutory obligation to recoup the overpaid funds. {29} In dissenting, I take no issue with the Majority Opinion’s reiteration of the general concern we expressed in Millar that the appeal process employed by DWS is poorly administered and occasions unnecessary human hardship. See Majority Opinion ¶ 23; see also Millar, 2013-NMCA-055 ¶ 17 (recognizing the importance of “procedural fairness to a claimant” including “prompt notice of benefits being in jeopardy”). The facts of this case and Millar demonstrate that, although D W S cautions new benefit recipients by NCD that an employer’s successful appeal would require repayment of overpaid benefits, it belatedly notifies those same recipients when their initially favorable determinations of eligibility in fact have been appealed. Despite the absence of “any mandatory-statutory time limit that would require [the claimant] to be notified of the pending appeal,” Majority Opinion ¶ 10 (quoting Millar, 2013-NMCA-055 ¶ 14), prompt notification of the procedural event that both jeopardizes ongoing receipt of benefits and seeks a retroactive determination of ineligibility seems readily achievable by even so busy an agency as DWS. This is particularly so given that, like most funds that administer unemployment benefits, New Mexico law couples a final determination that benefits were overpaid with mandatory recoupment. See Section 51-1-3 8(H) (requiring that claimants whose benefit eligibility is “modified or reversed by a final decision . . . shall ... be liable to repay” unduly received benefits (emphasis added)). {30} Despite what we consider to be the imperfect nature of the DWS Tribunal’s appeal process, the question of constitutionality turns on whether Garduño was deprived of a legitimate property interest without being afforded an opportunity to be heard “at a meaningful time and in a meaningful manner.” Mathews, 424 U.S. at 333 (establishing the factors applicable to procedural due process analysis (internal quotation marks and citation omitted)). Considering the Mathews factors, the Majority Opinion concludes that the private interest with which DWS impermissibly interfered is Garduño’s “right to timely notice of Employer’s appeal,” the absence of which it concludes caused a “significantly high” risk of erroneous deprivation due to her disproportionately brief opportunity to prepare for the appeal hearing. Majority Opinion ¶¶ 20-22. The majority further holds that these failures were not overcome by DWS’s interest in “avoiding onerous fiscal and administrative burdens[.]” Majority Opinion ¶ 22. For many reasons, this analysis is mistaken. {31} First, I question the majority’s determination that Garduño has pleaded the threshold requirement needed to trigger procedural due process review. It is particularly entrenched within constitutional jurisprudence that a claim such as Garduño’s gains cognizability only upon a showing that she was deprived of “a legitimate liberty or property interest” rightfully possessed by her. Titus v. City of Albuquerque, 2011-NMCA-038, ¶ 40, 149 N.M. 556, 252 P.3d 780 (internal quotation marks and citation omitted), cert. quashed, 2013-NMCERT-003, 300 P.3d 1182. That showing has b een widely accepted as the switch that initiates the safeguards of due process. See Roth, 408 U.S. at 577; Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000) (“We established nearly twenty-five years ago that to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant’s actions deprived plaintiff of a protectible property interest.”); Lucas v. Monroe Cnty., 203 F.3d 964, 978 (6th Cir. 2000) (“The Fourteenth Amendment’s procedural protection of property is a safeguard of the security of interest that a person has already acquired in specific benefits.” (internal quotation marks and citations omitted)). While the majority is correct that statutorily derived unemployment benefits have been held by many courts to constitute a property interest, see Berg, 755 F.2d at 1345; some even at the initiatory stage of a claimant’s application, see Wilkinson, 627 F.2d at 664-65 n.18, in appealing to the district court Garduño elected to abandon any challenge to the Tribunal’s determination that she was substantively ineligible for unemployment benefits. Absent a pleaded or preserved assertion of property right, Gardufio’s desire to keep — and not repay to DWS — the overpaid benefits does not give rise to a “legitimate claim of entitlement.” Roth, 408 U.S. at 577. Rather, her interest is of the type disallowed by Roth: that for which a claimant has an “abstract need or desire” or a “unilateral expectation.” Id.; see Cassidy v. Adams, 872 F.2d 729, 732 (6th Cir. 1989) (finding no vested right to prevent recoupment of overpaid unemployment benefits under then-existing Kentucky state law or the Social Security Act). Nowhere does New Mexico law bestow ownership of benefits that are improperly awarded. Absent such a cognizable property interest, Gardufio’s claim fails under Millar.[2] {32} Even assuming the existence of a property interest under New Mexico law that persists despite abandonment in district court, the majority’s Mathews analysis is flawed. At the outset, the interests to be considered under the Mathews factors are incorrectly identified. Gardufio’s interest is not to “timely notice of Employer’s appeal,” Majority Opinion ¶ 20, but rather her private interest in unemployment compensation and the fair process of determining her eligibility to it. Similarly, DWS’s interest is not in “avoiding onerous fiscal and administrative burdens,” Majority Opinion ¶ 22, but in efficiently processing the volume of unemployment claims in New Mexico and preserving funds, and when necessary, recouping overpaid funds so that they may be used to properly compensate eligible claimants. As well, this interest serves the ancillary purpose of protecting employers from being wrongly compelled to pay benefits to ineligible claimants. Lastly, the majority evaluates the risk of erroneous deprivation speculatively and without proper consideration of “the probable value, if any, of . . . procedural safeguards!.]” Mathews, 424 U.S. at 335. {33} It is exactly those procedural safeguards, considered within our neutral evaluation of the time and manner in which the appeal hearing was conducted, that compel substantive rejection of Gardufio’s due process challenge under Mathews. Without discussing the hearing itself, the majority speculates on what could have been done by Garduño to minimize her potential debt or to prepare for the hearing for a longer period of time. Majority Opinion ¶¶ 20-21. This discussion has no factual basis in the record and, more importantly, circumvents the real Mathews standard that considers the circumstances as a whole in light of the process due. See Sandia, 2002-NMCA-057, ¶ 10 (“Procedural due process is a flexible right and the amount of process due depends on the particular circumstances of each case.” (internal quotation marks and citation omitted)). Here, the proceeding took place on two days, August 19, 2010 and September 9, 2010. Both Garduño and her Albertson’s employer testified before an Administrative Law Judge. The burden of proof was on Employer to establish Gardufio’s misconduct. Documents, including a video, were provided both to and by Garduño, and were considered by the judge during the proceeding. Notably, the judge continued the proceeding for a period of three weeks so that Garduño could: (1) submit additional documents she believed to be important to the proceeding; (2) effectively subpoena a witness Garduño wished to question that was not available on August 19; and (3) be provided the actual video in an accessible format that was testified to but unavailable on the first day of the proceeding. {34} Although earlier notice of Employer’s appeal would have been preferable, I cannot agree that the notice of the hearing itself and the manner in which it was conducted by the Tribunal failed to comport with due process. To the contrary, the proceeding was conducted “in a reasonable time and manner.” Since that is the constitutional inquiry, and under the Mathews factors the procedural safeguards of the Tribunal hearing overcame the delayed provision of notice of Employer’s taking of the appeal, I do not agree that Gardimo’s due process rights were violated, even assuming she has a legitimate property interest. See Berg, 755 F.2d at 1347 (holding that under the Mathews test, the claimant showed “no significant injury caused by inadequate pretermination notice” of hearing regarding unemployment benefits). {35} For all these reasons, I respectfully dissent from Part C of the Majority Opinion. J. MILES HANISEE, Judge It is also my view that due to the nearly identical facts and overlapping legal issues shared by the instant case and Millar, DWS’s request for consolidation of the two cases should have been granted. See Order of August 6, 2012 (holding in abeyance DWS’s request for consolidated consideration). In Millar, a case in which our Supreme Court elected not to grant certiorari, we recognized that the claimant sought a waiver of money owed for benefits to which a claimant was disqualified and to which he had “no vested right.” 2013-NMCA-055, ¶ 16. It is precisely the absence of such a “vested right” that forecloses the propriety of due process review herein. Because we concluded that no such right existed in Millar, we must do the same here.